## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARIA BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-856-NJR-DGW |
| | ) | |
| ELLEN DAUBER and KAHALAH CLAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Maria Bailey brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Ellen Dauber, Kahalah Clay, and Thomas Edwards violated her constitutional rights (Doc. 1). The action was filed in the Northern District of Illinois on May 30, 2014, but it was transferred to this Court on July 30, 2014 (Doc. 20). Following the transfer, Thomas Edwards was dismissed as a Defendant because he was never properly served in accordance with Rule 4 of the Federal Rules of Civil Procedure (Doc. 40). Defendant Ellen Dauber and Defendant Kahalah Clay both filed motions to dismiss Ms. Bailey's claims against them on the basis that they are entitled to absolute immunity from suit (Docs. 28, 34). The motions to dismiss are presently before the Court, and for the reasons stated below, both motions are granted.

### FACTUAL BACKGROUND

Maria Bailey's mother, Queen Edwards, died on Tuesday, May 28, 2013. Bailey and her sister made arrangements with the visitation and funeral scheduled for Sunday,

June 2, and the burial at Jefferson Barracks National Cemetery scheduled for Monday, June 3. Three days before the burial, on Friday, May 31, Queen's husband, Thomas Edwards, cancelled the burial plans at Jefferson Barracks. Ms. Bailey spoke with someone at Jefferson Barracks who told her that Jefferson Barracks could not proceed with the burial without a court order.

Ms. Bailey went to the St. Clair County Courthouse in Belleville, Illinois, on Friday, May 31, at approximately 3:15 in the afternoon, in an attempt to obtain a court order preventing Mr. Edwards from interfering with his wife's burial. Defendant Kahalah Clay is the Clerk of Court for St. Clair County, and Defendant Ellen Dauber is an associate judge. Ms. Bailey went to the Clerk of Court's office where she "recounted my reasons for being there, that my mother . . . had died, that a Mr. Thomas Edwards had stopped the burial of my mother and that I wanted to file a complaint and go before a judge to petition for a temporary restraining order." (Doc. 1, p. 39). The Clerk's office employee whom she spoke to directed her to another window, where she again "recounted this information." (*Id.*). The second employee expressed doubt that Ms. Bailey would be able to see a judge that day due to the late hour; she then went to speak with her supervisor to see if anything could be done (*Id.*). The supervisor came forward and told Ms. Bailey that "there are no judges present and available at this hour, so you will not be able to present a petition to a judge today." (*Id.*). Ms. Bailey left the courthouse without filing a petition or speaking with a judge.

Sometime on May 31, Mr. Edwards filed a petition for a temporary restraining order regarding Queen's funeral and burial (Doc. 1, p. 33–38). Judge Dauber entered an order at 5:24 p.m. on May 31, granting Mr. Edwards's petition and issuing a temporary

restraining order prohibiting Queen's children from proceeding with the funeral and burial they had planned for June 2 and 3, and prohibiting the visitation, funeral, and burial of Queen until further court order (Doc. 1, pp. 30–32).

One year later, Maria Bailey filed this action against Kahalah Clay and Judge Dauber alleging they each violated her constitutional rights to equal protection and due process (Doc. 1). In short, Ms. Bailey takes exception to the fact that Thomas Edwards was able to file a petition for a temporary restraining order and have it heard by a judge, but she was not. Judge Dauber filed a motion to dismiss on August 21, 2014, arguing that she was entitled to absolute judicial immunity from suit (Docs. 28, 29). Kahalah Clay filed a motion to dismiss on September 4, 2014, likewise arguing that she was entitled to quasi-judicial immunity from suit (Docs. 34, 35). Ms. Bailey filed a response to both motions to dismiss (Docs. 37, 39), and Judge Dauber filed a reply (Doc. 38).

## DISCUSSION

### A. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to address the legal sufficiency of the plaintiff's claim for relief; it does not look at the merits of the plaintiff's claim or decide whether the plaintiff will ultimately prevail. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the non-moving party's favor. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

In addressing the motions to dismiss presently before the Court, the issue is

whether Judge Dauber and Kahalah Clay are immune from suit. "[J]udges are entitled to absolute immunity from damages for their judicial conduct." *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (citing *Mireles v. Waco,* 502 U.S. 9, 11–12 (1991)). Judicial immunity confers complete immunity from suit, not just from ultimate assessment of damages, and it is applicable in suits under § 1983. *Mireles*, 502 U.S. at 11; *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). Judicial immunity has also been "extended to apply to 'quasi-judicial conduct' of '[n]on-judicial officials whose official duties have an integral relationship with the judicial process.'" *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). The purpose of the immunity is to "protect judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants," and to "prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Richman*, 270 F.3d at 435 (citations omitted).

### B.  Judge Ellen Dauber's Motion to Dismiss

Judge Dauber argues that Ms. Bailey's claim must be dismissed because the Judge is entitled to absolute judicial immunity (Docs. 28, 29). The Court agrees.

Judicial immunity extends to all judicial action even if the action was in error, was done maliciously, was in excess of the judge's authority, or was flawed by the commission of grave procedural errors. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1015 (7th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). "[T]he immunity is overcome in only two sets of circumstances." *Mireles v. Waco,* 502 U.S. 9, 11 (1991). First, "a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Id.* Second, "a judge is not immune for actions, though judicial

in nature, taken in the complete absence of all [subject matter] jurisdiction." *Id.* at 12.

Ms. Bailey claims that three actions by Judge Dauber violated her constitutional rights. First, Bailey claims that her rights were violated when the Judge provided legal assistance and advice to Thomas Edwards by helping him write a petition seeking a temporary restraining order against Bailey (Doc. 1, p. 8). However, judges routinely provide guidance to pro se litigants on what is expected in a petition or how to properly state a claim. *See Williams v. Wahner*, 731 F.3d 731, 734 (7th Cir. 2013); *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007). In providing such guidance, they are acting within their judicial capacity, and therefore, their actions are entitled to absolute immunity. To the extent that Ms. Bailey alleges Judge Dauber went beyond that, her complaint does not contain sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bausch v. Stryker Corp.,* 630 F.3d 546, 558 (7th Cir. 2010). Ms. Bailey's bald allegation that Judge Dauber gave Edwards legal advice and outright authored the petition for him is simply implausible without further supporting facts.

Even if Bailey's bald assertions were believable (and Judge Dauber exceeded her authority in giving advice to Thomas), Judge Dauber was still acting in her judicial capacity and thus entitled to judicial immunity. *Mireles*, 502 U.S. at 12–13 ([A] judge "will not be deprived of immunity because the action he took was . . . in excess of his authority."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"); *Cooper v. Parrish,* 203 F.3d 937, 945 (6th Cir. 2000) (holding that a judge who improperly engaged in *ex parte* contact with prosecutors and gave them legal advice on how to improve their case was absolutely

immune). *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (holding judge was absolutely immune even if, as the plaintiff alleged, the judge acted as an advocate for one of plaintiff's opponents and conspired to rule against plaintiff) (superseded by statute on other grounds).

Second, Ms. Bailey claims that Judge Dauber violated her constitutional rights by ruling on the petition which she helped write (Doc. 1, p. 8). Ruling on a petition for a temporary restraining order is "a function normally performed by a judge," and Judge Dauber was undoubtedly acting in her judicial capacity when she ruled on the petition filed by Thomas Edwards. *Mireles*, 502 U.S. at 12. Thus, regardless of whether Judge Dauber prejudiced the proceedings by helping to prepare the petition, she is entitled to judicial immunity for her actions in ruling on the petition. *See id.*

Finally, Ms. Bailey claims that Judge Dauber violated her constitutional rights by refusing to conduct an evidentiary hearing on whether Bailey's mother was competent to sign a power or attorney (Doc. 1, p. 8). Again, determining whether an evidentiary hearing is necessary is a discretionary function normally performed by a judge. Therefore, Judge Dauber is entitled to judicial immunity for her decision declining to hold an evidentiary hearing. *See Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) (holding parole board officials who declined a request to conduct a second preliminary parole revocation hearing were absolutely immune from suit).

In sum, Judge Dauber is protected by judicial immunity for each of her actions that Ms. Bailey claims violated her constitutional rights, and therefore, Judge Dauber's motion to dismiss must be granted.

**C. Clerk of Court Kahalah Clay's Motion to Dismiss**

Kahalah Clay argues that Ms. Bailey's claims against her must be dismissed because she is entitled to quasi-judicial immunity (Docs. 34, 35). Again, the Court agrees.

Before discussing Ms. Clay's quasi-judicial immunity, however, the Court wishes to note that Ms. Bailey has failed to state a claim against Ms. Clay even though this argument was not made by Ms. Clay. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). As a result, there is no *respondeat superior* liability under § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Supervisors can only be held responsible for the constitutional violations of their subordinates if the violation occurred at the supervisor's direction or with her knowledge and consent. *See Hildebrandt v. Illinois Dep't of Natural Resources,* 347 F.3d 1014, 1039 (7th Cir. 2003). The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some casual connection or affirmative link between the action complained about and the official sued is necessary for [Section] 1983 recovery." *Hildebrandt,* 347 F.3d at 1039 (quoting *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)). Here, Ms. Bailey does not allege that Kahalah Clay was personally involved in the incident at issue; rather, she alleges that she was turned away from the Clerk's office "by employees of defendant Kahalah" (Doc. 1, p. 6). Ms. Bailey also does not allege that Ms. Clay knew and approved of her subordinates refusing to file Ms. Bailey's petition or schedule her for a hearing (*see* Doc. 1). Therefore, the allegations regarding Ms. Clay are insufficient for liability to

attach, and the claims against her must fail.

Assuming arguendo that Ms. Bailey had stated a claim against Ms. Clay, the Court turns to the issue of quasi-judicial immunity. Absolute judicial immunity applies to individuals who are "functionally comparable to judges" meaning they "engage in adjudication" or "exercise a discretionary judgment" as part of their function. *Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012); *Snyder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004) (citations omitted). Judicial immunity also applies to individuals who perform administrative or ministerial functions pursuant to the explicit direction of a judge. *Snyder*, 380 F.3d at 287.

Ms. Bailey claims that her constitutional rights were violated when she was "turned away from the office of the Clerk of St. Clair County" (Doc. 1, p. 5). It appears that Ms. Bailey's challenge centers on two actions: she was not permitted to file a petition for a temporary restraining order, and she was denied an in-person hearing in front of a judge (*See* Doc. 1 and Doc. 39).

With regard to the denial of a hearing, scheduling determinations are judicial functions that are "an integral part of the adjudicatory process" and are therefore subject to absolute immunity. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 622-23 (7th Cir. 2002) (quoting *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) ("[A] court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are absolutely immune.")). As such, whether it was Kahalah Clay or some other employee of the Clerk's office who told Ms. Bailey that she could not have a hearing that afternoon, the action is protected by quasi-judicial immunity.

As for the refusal to file the petition, Ms. Clay did not address this action in her motion to dismiss, but Ms. Bailey brought it up in her response. Therefore, the Court will discuss it. A Clerk of Court who, on her own initiative and in the absence of explicit judicial direction, refuses to accept documents tendered for filing is not entitled to absolute quasi-judicial immunity. *Snyder v. Nolan*, 380 F.3d 279, 287–88 (7th Cir. 2004). Here, however, there is no indication that Ms. Bailey actually had a proposed petition with her, much less that she presented it to the clerk's office. In particular, the complaint does not allege that Ms. Bailey prepared a petition or provide any details about it. Ms. Bailey also did not submit a copy of the petition that she allegedly tried to file in the state court. In an affidavit attached to the complaint in this case, Ms. Bailey indicates that upon her arrival to the clerk's office, she "recounted [her] reasons for being there . . . that she wanted to file a complaint and go before a judge to petition for a temporary restraining order" (Doc. 1, p. 39). She further indicates that she was told "there are no judges present and available at this hour, so you will not be able to present a petition to a judge today," and "as a result of [that] information, I did not file a petition seeking a temporary restraining order" (Doc. 1, p. 39). In other words, it appears that Ms. Bailey told the clerk's office that she wanted to file a petition, but she had not yet prepared the petition. And when she was told she would not be able to have a hearing in front of a judge that afternoon, she left without attempting to author a petition. Accordingly, Ms. Bailey has no viable constitutional claim against Kahalah Clay or any other employee of the Clerk's office for refusing to accept a document tendered for filing.

In sum, Ms. Bailey failed to state a claim against Kahalah Clay because she failed to sufficiently allege that Ms. Clay was personally involved in the purported

Page 9 of 10

constitutional deprivations. Even if it was Ms. Clay who declined to schedule a hearing on the afternoon of Friday, May 31, that action is protected by quasi-judicial immunity. As for the purported refusal to accept Ms. Bailey's petition, Bailey failed to allege facts sufficient to establish that an actual constitutional violation occurred. As such, Ms. Clay's motion to dismiss must be granted.

## CONCLUSION

Defendant Ellen Dauber's motion to dismiss (Doc. 28) and Defendant Kahalah Clay's motion to dismiss (Doc. 34) are **GRANTED**. They are both **DISMISSED** from this action. The third and final Defendant, Thomas Edwards, was previously dismissed (Doc. 40). Accordingly, this action is **DISMISSED** in its entirety. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   February 24, 2015**

s/ Nancy J. Rosenstengel
NANCY J. ROSENSTENGEL
United States District Judge